# Case No. 20-CR-00583

| | |
|---|---|
| **United States of America** | **In the United States District Court** |
| v. | **For the Southern District of Texas** |
| **Abdul Fatani** | **Houston Division** |

**REPLY TO GOVERNMENT'S MOTION IN LIMINE (DOC. NO. 316).**

Mr. Fatani, offers this reply to the government's motion in limine. Also, based on the government's motion in limine, he urges an additional motion in limine himself. He requests that the government approach and obtain the Court's permission prior to introducing any evidence or testimony about Mr. Fatani's proffer-protected interview with government agents.

**1. THE GOVERNMENT SHOULD APPROACH PRIOR TO INTRODUCING STATEMENTS PROTECTED BY THE PROFFER AGREEMENT.**

Mr. Fatani agrees that "'[n]onprosecution agreements [like proffers or pleas deals] are contractual in nature' and are thus interpreted 'in accordance with general principles of contract law.'" *United States v. Appellant 1*, 56 F.4th 385, 390 (5th Cir. 2022) ((*citing United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999)). However, the Government is apparently asking for pre-authorized permission to use Mr. Fatani's proffer-protected statements against him: "the Government respectfully requests a pre-trial order clarifying that the Government may use Fatani's proffered statements should he introduce evidence or argument that contradicts those

1

statements." Doc. no. 316 at 3. Mr. Fatani believes this request is premature because we don't know what evidence will be introduced or what arguments will be made at trial.

The Fifth Circuit has explained, discussing non-prosecution agreements, that "[p]rior to prosecuting the defendant, the government must prove to the court by a preponderance of the evidence that the defendant breached the agreement in a manner sufficiently material to warrant recission." *United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999). The same standard should apply here. If the government believes that Mr. Fatani's evidence or arguments have triggered paragraph 5 of his proffer agreement, then the government should alert the Court outside of the jury's presence, and prove their argument by a preponderance of the evidence.

Finally, it should be noted that evidence related to EIDL loans is the subject of a motion in limine urged by Mr. Fatani. *See* Doc. no. 317.

2. **MR. FATANI'S AND CO-CONSPIRATOR STATEMENTS.**

Mr. Fatani recognizes that his own statements and those of co-conspirators are not considered hearsay, so long as they meet the various requirements of Rule 801(d). However, the statements relating to a separate loan, unrelated to the charged conspiracy, are subject to Mr. Fatani's motion in limine, and the government should

establish that these statements were "made by the party's coconspirator during and in furtherance of the conspiracy" prior to admission of these statements. *See* Doc. no. 316 at 9-11; Doc. no. 317 at 5-6; Fed. R. Evid. 801(d)(2)(E).

**3.  IF THE COURT ALLOWS MR. FATANI'S STATEMENTS TO BE USED AGAINST HIM, HE SHOULD BE PERMITTED TO ENSURE THOSE STATEMENTS DON'T MISLEAD THE JURY.**

As already discussed, the government wants to use limited portions of Mr. Fatani's proffer-protected statements against him at trial. However, if they are permitted to do so, the government wants to ensure that the jury does not receive the full account of Mr. Fatani's statements to the government. The government believes allowing the jury to view the complete picture would allow Mr. Fatani to "smuggle his self-serving statements into the record. . ." *Id.* If the Court permits portions of Mr. Fatani's statements to be introduced, then the Court should allow additional statements to be introduced pursuant to the rule of optional completeness. *See* Fed. R. Evid. 106.

In effect, although Mr. Fatani did not confess to wire fraud or conspiracy to commit wire fraud in either statement, the government wants to cherry pick portions of his statement and use them against Mr. Fatani in an attempt to create the appearance of a confession. If the Court permits the government to use Fatani's statements against him, then the Court should allow the remainder of his statements

3

under the rule of optional completeness so that the jury is not misled about the facts and circumstances surrounding Mr. Fatani's statements.

First, the government unfairly limits the application of Rule 106, limiting the rule to statements "necessary to clarify or explain the portion received." *Id.* at 13. In reality, the Fifth Circuit has interpreted the fairness standard associated with Rule 106 to require only that "that the omitted portion be relevant and 'necessary to qualify, explain, or place into context the portion already introduced.'" *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) (*citation omitted*). The portions of Mr. Fatani's statement are necessary to place the remainder of his statements into context. He did not simply confess to knowing that Aqeel was going to submit fraudulent loan applications on his behalf. Instead, he has always maintained that he was not aware of Aqeel's fraudulent activity until, possibly, he pieced together what happened sometime later.

Nor do the hearsay rules prevent the jury from learning the full context of Mr. Fatani's conversations with the government. As the D.C. Circuit Court explained:

> Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court.

4

> The most sensible course is to allow the prosecution to introduce the inculpatory statements. The defense can then argue to the court that the statements are misleading because of a lack of context, after which the court can, in its discretion, permit such limited portions to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence. Such a result is more efficient and comprehensible, and is consonant with the requirement that the "rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Federal Rule of Evidence 102.

*United States v. Sutton*, 801 F.2d 1346, 1368-1369 (D.C. Cir. 1986) (footnotes removed).[1]

A Seventh Circuit case, *United States v. Haddad*, is on point. 10 F.3d 1252, 1258 (7th Cir. 1993). There, a defendant admitted to knowing that marijuana was under his bed, but also stated that he did not know that a gun was also under the bed. The Seventh Circuit explained their four part test for when evidence should be admitted under rule 106: evidence should be admitted to "1) Explain the admitted evidence, 2) Place the admitted portions in context, 3) Avoid misleading the trial of fact, and 4) Insure fair and impartial understanding of the evidence." *Id.* There, the

---

[1] *United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986) ("If otherwise inadmissible evidence is necessary to correct a misleading impression, then either it is admissible for this limited purpose by force of Rule 106,. . ").

Court held:

> The marijuana that Mr. Haddad admitted placing under the bed was only some six inches from the implicated gun. The defendant in effect said "Yes, I knew of the marijuana but I had no knowledge of the gun." The admission of the inculpatory portion only (i.e. that he knew of the location of the marijuana) might suggest, absent more, that the defendant also knew of the gun. The whole statement should be admitted in the interest of completeness and context, to avoid misleading inferences, and to help insure a fair and impartial understanding of the evidence.

*Id.*

The same concern is present in Mr. Fatani's case. The Government clearly wants to create the impression for the jury that Mr. Fatani has admitted all of the elements of the charged offenses. Doc. no. 316 at 5-6. If allowed to cherry-pick only harmful statements, the government will be able to suggests that Mr. Fatani essentially made a full confession. However, this is incorrect. Mr. Fatani has at all times stated that he was unaware that Aqeel, and those who worked for him, were submitting fraudulent PPP loan applications on his behalf.

If the government is permitted to introduce portions of Mr. Fatani's statements against him, then the defense should be permitted to introduce the remainder of those statements.

4. **THE DEFENSE WILL APPROACH AND NOTIFY THE COURT PRIOR TO INTRODUCING EVIDENCE OF NEGLIGENCE ON THE PART OF THE BANKS.**

The defense agrees to notify the Court and the government prior to introducing evidence of negligence on the part of the bank who funded the loan for Route 786.

5. **THE GOVERNMENT MISSTATES THE RULE RELATED TO EVIDENCE AND ARGUMENTS WHEN A PARTY FAILS TO CALL CERTAIN WITNESSES.**

The government misstates the rule related to evidence and arguments showing that a party failed to call a particular witness. *See* Doc. no. 316, at 18. Although the government does cite the appropriate cases, the government takes a single sentence out of context. In *United States v. Chapman*, the issue appears to be whether the trial court should have instructed the jury about whether uncalled witnesses "create[d] an inference which the jury is permitted to draw against that party." 435 F.2d 1245, 1248 (5th Cir. 1970). What the government omits from their briefing is that such inferences *are* proper in certain circumstances:

> The long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible. McClanahan v. United States, 5 Cir. 1956, 230 F.2d 919, 925, cert. denied, 1956, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47. However, mere physical presence at the trial or accessibility for service of a subpoena does not determine a potential witness's availability. Rather, his availability may well depend, among other things, upon his relationship to one or the other of the parties, and the nature of the testimony that he might be expected to give. Id. at 926. When a witness is controlled by one party, failure to call the witness, if his testimony would elucidate facts in issue, creates an inference which the jury is

7

> permitted to draw against that party. See Williams v. United States, 5 Cir. 1968, 394 F.2d 821, 822, cert. denied, 1968, 393 U.S. 890, 89 S.Ct. 211, 21 L.Ed.2d 169; Gass v. United States, 1969, 135 U.S.App.D.C. 11, 416 F.2d 767, 775 and n. 43.

*United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970).[2]

The cases cited by the government deal with adverse inference jury instructions. They do not discuss the admissibility of evidence or arguments. The government's Fifth motion in limine should be overruled.

**6.  THE GOVERNMENT'S OBJECTIONS TO EXHIBITS 1-2 AND 4-20 ARE MISPLACED.**

In a wide ranging objection, the government objects to defense exhibits 1-2 and 4-20. The government suggests the exhibits are inadmissible because they show selective prosecution, could implicate the government charging decisions, and might result in jury nullification arguments.[3] *See* Doc. no. 18-20. The government's arguments are misplaced. Further, Mr. Fatani is happy to discuss the relevance of

---

[2] The second case cited by the government verified the correct reading of *Chapman*. *See United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009) (In *Chapman,* we held that the district court may not give an adverse inference instruction if the missing witness is "equally available" to both parties. 435 F.2d at 1247. However, we carved out an exception to this rule if one of the parties controls that witness and his testimony would elucidate facts in issue. *Id.* Appellant argues for application of the *Chapman* exception, but fails to explain why the Government controlled Cazeau or how his testimony would elucidate facts in issue.)

[3] The government also urges the court to prevent evidence "about the effects of prosecution" or potential sentences upon conviction. *See* Doc. no. 316 at 20-21. Mr. Fatani does not believe those arguments are made in reference to any exhibits.

8

his exhibits, but at this point would request that he be allowed to discuss the relevance in camera, so as not to disclose potential defenses prior to trial.

First, the government cites two cases dealing with discovery and selective-prosecution claims. In *Washington v. Tex.*, the Court "consider[ed] the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of his race." 388 U.S. 14, 18–19 (1967). In *In re U.S.*, the Fifth Circuit considered sanctions imposed on the Government in a federal death penalty trial. 397 F.3d 274, 286 (5th Cir. 2005). Neither case discussed the admissibility of evidence.

The Government also discusses jury nullification. In *United States v. Thompson*, the Fifth Circuit recognized the "de facto power to refuse to apply the law as instructed by the court" but also upheld the trial court's limitation on the defendant's closing argument. 253 F.3d 700 (5th Cir. 2001). *Thompson* does not concern the admissibility of evidence.

In *United States v. Re*, the Seventh Circuit considered a trial court's limitation on a defendant's cross examination. 401 F.3d 828, 832 (7th Cir. 2005). There, defense counsel elicited testimony from the government's witness about his misidentification of another suspect, but counsel was prevented from questioning

the witness about whether that suspect had been charged with any crime. The Court explained: "In so ruling, the court differentiated between Leach's ability to identify his attackers, a proper subject for cross-examination, and the government's exercise of prosecutorial discretion, an improper subject for cross-examination. Defendants now assert that the restrictions placed upon Leach's cross-examination by the district court were in error." *Id.* The Court held that the government's decision not to charge the second suspect "was distinct from and irrelevant to [the witness's] ability to identify his assailants. As the record demonstrates, the court in no way prohibited inquiry into the quality of [the witness's] identifications." *Id.* Stated another way, the Court did not impede the defendant's ability to present a defense.

---

The government, in this case, asks the Court to exclude almost all of Mr. Fatani's proffered evidence based on unfounded concerns. Indeed, this is the overarching theme of the governments motion in limine: the Court should make assumptions about Mr. Fatani's trial strategy so that (1) all of the evidence the government intends to present is admissible and (2) none of Fatini's evidence is admissible. To grant the Government's motion would almost completely prevent Mr. Fatani from presenting a defense, violating fundamental rights.

In *Washington v. Tex.*, the Supreme Court discussed what it regarded as the

10

most basic ingredients of due process of law. Quoting *in re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), it observed that:

> 'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.' 333 U.S., at 273, 68 S.Ct. at 507 (footnote omitted).
>
> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. 14, 18–19 (1967).

The Court should decline the government's suggested approach of preventing Mr. Fatani from presenting the majority of his proffered evidence without good cause.

7. **EITHER THE GOVERNMENT REPORTS ARE ACCURATE, OR THEY AREN'T, THE GOVERNMENT CANNOT HAVE IT BOTH WAYS.**

The government ends with a curious argument. The government would like to prevent Mr. Fatani from impeaching witnesses with their statements as memorialized in government reports because "[t]hose reports or memoranda of

11

interviews are not statements of the person interviewed. Rather, they are an agent's summary. . . ." *See* Doc. no. 316 at 21. What makes this argument so strange is that the government, in this same filing, relies upon two "memorandum of interview[s]" when arguing that they should be permitted to introduce Mr. Fatani's statements at trial. *See* Doc. no. 316 at 3-7, appendix 2 & 3. In any event, the government can't have it both ways, either the various reports and memorandums are accurate, or they are not.

It should also be noted that each of the cases cited by the government deals with Jencks act disclosures, not the admissibility of impeachment evidence. *See id.* at 22. Once again, the government's arguments miss the mark.

However, Mr. Fatani agrees to properly impeach witnesses in accordance with the Rules of Evidence if the need arises.

                                      Respectfully submitted,

                                      /s/ Jonathan Landers
                                      Jonathan D. Landers
                                      TBN 24070101
                                      917 Franklin St, Suite 300
                                      Houston, Texas 77002
                                      Cell: (713) 301-3153
                                      Fax: (713) 513-5505
                                      Jlanders.law@gmail.com
                                      **ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on 01/30/2023 this motion was served on all counsel of record through the ECF filing system.

/s/ Jonathan Landers
Jonathan D. Landers
